# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SOTAT, LLC., | |
| Plaintiff, | C.A. No. 1:21-cv-01775-VAC-CJB |
| v. | JURY TRIAL DEMANDED |
| FANTASIA TRADING, LLC, | |
| Defendant. | |

---

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS FOR LACK OF PATENTABLE SUBJECT MATTER

---

Dated:  September 6, 2022

Zhun Lu (#4427)
**RIMON, P.C.**
200 Continental Drive, Suite 401
Newark, DE 19713
Telephone/Facsimile: (302) 688-7566
zhun.lu@rimonlaw.com

*Of Counsel:*

Jason Xu (*Pro Hac Vice Admitted*)
**RIMON, P.C.**
1990 K Street NW, Suite 420
Washington, D.C. 20006
Telephone/Facsimile: (202) 470-2141
jason.xu@rimonlaw.com

*Attorneys for Defendant Fantasia Trading LLC*

## TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ................................................1

II.    SUMMARY OF ARGUMENT ........................................................................1

III.   STATEMENT OF THE RELEVANT FACTS ........................................................2

IV.    LEGAL STANDARDS ...............................................................................3

     A.    Judgment On the Pleadings Through Rule 12(c) ...........................................3

     B.    Patent Eligibility Under 35 U.S.C. § 101 ....................................................4

V.     ARGUMENT .........................................................................................5

     A.    Claim 19 of the '207 Patent and Claim 10 of the '809 Patent Are
         Representative ..................................................................................5

     B.    *Alice* Step 1: The Asserted Patents are Directed To Abstract
         Ideas ............................................................................................7

         1.    Mobile surveillance is an abstract idea ..............................................7

         2.    Remotely controlling the recording, storing, and
              delivering of surveillance data through a mobile device
              is an abstract idea ....................................................................9

         3.    Dependent claims are also abstract ideas ...........................................11

         4......... The claims do not improve computer technology                  12

     C.    *Alice* Step 2: The Claims of the Asserted Patents Recite No
         Inventive Concept ............................................................................14

VI.    CONCLUSION.......................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
   838 F.3d 1266 (Fed. Cir. 2016).............................................................................. 10

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012)........................................................................... 4, 5

*Bilski v. Kappos*,
   561 U.S. 593 (2010)............................................................................................... 3

*BroadSoft, Inc. v. CallWave Commc'ns, LLC*,
   282 F. Supp. 3d 771 (D. Del. 2017), *aff'd*, 739 Fed. Appx. 985 (Fed. Cir.
   2018) ...................................................................................................................... 7

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)........................................................................... 12

*buySAFE, Inc. v. Google, Inc.*,
   765 F.3d 1350 (Fed. Cir. 2014)............................................................................. 4

*Callwave Commc'ns, LLC v. AT&T Mobility, LLC*,
   207 F. Supp. 3d 405 (D. Del. 2016)...................................................................... 8

*Chamberlain Grp. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019)................................................................... 1, 8, 11

*ClearDoc, Inc. v. RiversideFM, Inc.*,
   2022 WL 6066798 (D. Del Feb. 22, 2022)......................................................... 2, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)............................................................... 5, 11, 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..................................................... 2, 9, 11, 15

*Fast 101 PTY Ltd. v. Citigroup Inc.*,
   424 F. Supp. 3d 385 (D. Del. 2020), *aff'd* 834 Fed. Appx. 591 (Fed Cir.
   2020), *cert denied*, 141 S. Ct. 2725 (2021)......................................................... 6

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016).............................................................................. 9

*Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*,
   2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016)......................................... 1, 7, 8, 9

## TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
    173 F. Supp. 3d 717 (N.D. Ill. 2016) ................................................................... 8

*Morsa v. Facebook, Inc.*,
    77 F. Supp. 3d 1007 (C.D. Cal. 2014), *aff'd*, 622 F. App'x 915 (Fed. Cir.
    2015) ................................................................................................................... 7

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ....................................................................... 14, 16

*Rondevoo Techs., LLC v. Aernos, Inc.*,
    C.A. No. 19-680 (RGA), 2020 WL 1441116 (D. Del. Mar. 24, 2020) ....... 12, 13

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) ................................................................................ 3

*Sensormatic Electronics, LLC v. Wyze Labs, Inc.*,
    2021 WL 2944838 (Fed. Cir. July 14, 2021) .............................................. 1, 8, 15

*SkillSurvey, Inc. v. Checkster LLC*,
    178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir.
    2017) ................................................................................................................. 16

*Smart Sys. Innovations, LLC v. Chicago Transit Authority.*,
    No. 14-cv-08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) ....................... 16

*Sviluppo Dell'Elettronica S.p.A. v. Rhapsody Int'l Inc.*,
    C.A. No. 18-69 (MN), 2019 WL 1785429 (D. Del. Apr. 24, 2019) .................... 7

*Sviluppo Dell'Elettronica S.p.A. v. Rhapsopy Int'l Inc.*,
    No. 18-69 (MN), 2019 WL 2491898 (D. Del. June 14, 2019) ......................... 16

*SynKloud Techs., LLC v. HP Inc.*,
    490 F. Supp. 3d 806 (D. Del. 2020) ................................................................. 14

*Synopsis, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ........................................................................ 16

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) .................................................................. *passim*

*TTP Tech LLC v. Zebra Techs. Corp.*,
    2019 WL 3935179 (D. Del. Aug. 20, 2019) ....................................................... 4

## TABLE OF AUTHORITIES CONT'D

**Page(s)**

**Cases**

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) ............................ 7, 13

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................................ 16

*VideoShare, LLC v. Google, Inc.*,
   2016 WL 4137524 (D. Del. Aug. 2, 2016) ..................................................................... 3, 11

*WhitServe LLC v. Dropbox, Inc.*,
   854 Fed. Appx. 367 (Fed. Cir. 2021) ................................................................................. 13

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
   100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir.
   2016) ...................................................................................................................................... 8

*WiTricity Corp. v. Momentum Dynamics Corp.*,
   C.A. No. 20-1671 (MSG), 2021 WL 4426959 (D. Del. Sept. 27, 2021) ........................... 12

**Statutes**

35 U.S.C. § 101 .............................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(c) ................................................................................................... 1, 3, 4

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On December 17, 2021, Plaintiff SOTAT, LLC ("Plaintiff" or "SOTAT") filed this lawsuit accusing Defendant Fantasia Trading, LLC ("Defendant" or "Fantasia") of infringing U.S. Patent Nos. 9,854,207 (the "'207 Patent") and 10,511,809 (the "'809 Patent") (collectively the "Asserted Patents")."  (D.I. 1).  SOTAT accuses Fantasia of infringing claim 19 of the '207 Patent and claim 10 of the '809 Patent in the Complaint.  (*Id.*)  Fantasia filed an Answer on February 24, 2022.  (D.I. 10.)  In its Infringement Contentions on August 4, 2022, SOTAT accuses Fantasia of infringing claims 1, 3-11, and 13-27 of the '207 Patent and claims 1, 3-11, and 13-20 of the '809 Patent (the "Asserted Claims").  Fantasia moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) for failure to claim patentable subject matter.

## II.     SUMMARY OF ARGUMENT

The claims of the Asserted Patents are directed to the abstract ideas of mobile surveillance while remotely controlling the recording, storing, and delivering of surveillance data through a mobile device.  The claims fail to recite any improvement to computer technology, instead reciting only generic components such as "server," "camera," and "motion detection mechanism" for practicing the abstract ideas.  Under a long line of precedent, such claims are invalid under § 101.  *See, e.g., Sensormatic Electronics, LLC v. Wyze Labs, Inc.,* 2021 WL 2944838 at * 3 (Fed. Cir. July 14, 2021) (invaliding claims under Section 101 because "[a]ll of the claims at issue describe wireless surveillance systems."); *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019) (invalidating claims because "the broad concept of communicating information wirelessly, without more, is an abstract idea" and further finding no inventive concept in the claims sufficient to render them non-abstract); *Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016) (invalidating claims directed to "the abstract idea of remote

surveillance or monitoring for security or control purposes"); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (invalidating "lengthy and numerous" claims directed to "monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results"); *In re TLI Communications LLC Patent Litigation,* 823 F.3d 607, 610 (Fed. Cir. 2016) (holding claims reciting the use of mobile devices to record, store, and deliver digital images and classification information to a central server are directed to an unpatentable abstract idea, i.e., "classifying and storing digital images in an organized manner."); *ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 6066798, at *5 (D. Del Feb. 22, 2022) (invaliding claims direct to an unpatentable abstract idea of remote controlling of recording, storing, delivering, and deleting of media content on a mobile device).

## III. STATEMENT OF THE RELEVANT FACTS

The Asserted Patents are closely related, share a substantially same specification, and list the same sole named inventor.  The '809 Patent is a continuation of the '207 Patent, and both patents are directed to the same general invention.

Claim 19 of the '207 Patent is representative regarding the '207 Patent:

19. A mobile surveillance system, comprising:

a mobile device configured to communicate with at least one camera positioned at a surveillance area, wherein the at least one camera captures surveillance data of the surveillance area; and

the mobile device is configured to control activation of the mobile surveillance system, and control start and stop of the capture of the surveillance data, and transfer of the surveillance data, wherein, the surveillance data is wirelessly communicated directly from a transmitter linked to the camera to the mobile device; and

the mobile device is further configured to activate upon detection of motion at the surveillance area,

wherein the detection of motion detects variations in motion measurements at the surveillance area; and

wherein mobile device activates when the motion measurements exceeds a determined threshold.

Claim 10 of the '809 Patent is representative regarding the '809 Patent:

10. A method for conducting surveillance comprising:

receiving an instruction from a mobile device to control start and stop of capture of surveillance data at a surveillance area;

capturing the surveillance data by a camera at the surveillance area, wherein the camera is operably engaged to a motion detection mechanism for detecting variations in motion measurements at the surveillance area; and

transferring said surveillance data to the mobile device when the motion detection mechanism obtains a motion detection measurement that exceeds a predetermined threshold indicating the surveillance area is unsecure,

wherein the mobile device displays a datebook comprising days of the week and times of day that can be synchronized with an application of the user device to schedule the transferring of surveillance data.

## IV.    LEGAL STANDARDS

### A.    Judgment On the Pleadings Through Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "When evaluating a motion for judgment on the pleadings, the court must accept all factual allegations in a complaint as true and view them in the light most favorable to the non-moving party." *VideoShare, LLC v. Google, Inc.*, 2016 WL 4137524, at *2 (D. Del. Aug. 2, 2016) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Judgment on the pleadings is appropriate where "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Rosenau*, 539 F.3d at 221. In ruling on a Rule 12(c) motion, courts may consider the "pleadings and exhibits thereto, and documents incorporated by reference." *VideoShare*, 2016 WL 4137524, at *2 (citation omitted).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *See Bilski v. Kappos*, 561

U.S. 593, 602 (2010); *TTP Tech LLC v. Zebra Techs. Corp.*, 2019 WL 3935179, at *2 (D. Del. Aug. 20, 2019).   Courts may properly decide this threshold issue by way of a motion for judgment on the pleadings.  *See, e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352, 1354-55 (Fed. Cir. 2014) (affirming a Rule 12(c) judgment on the pleadings); *In-Depth Test*, 2018 WL 6617142, at *1, *4-7 (granting motion for judgment on the pleadings finding patent ineligibility).  In those situations, claim construction is not required to conduct a § 101 analysis. *See Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.       Patent Eligibility Under 35 U.S.C. § 101

The Supreme Court in *Alice* set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."  *Alice*, 573 U.S. at 217.  First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea.  *Id*.  If the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Id*. (internal quotations and citation omitted).  This second step is "a search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id*. at 217-18 (internal quotations and citation omitted).  A claim reciting merely "well-understood, routine [and] conventional activities previously known to the industry" cannot provide an inventive concept.  *Id*. at 2359 (internal quotations and citation omitted).

## V.     ARGUMENT

The claims of the Asserted Patents fail both steps of *Alice* because they are directed to abstract ideas and recite no inventive concept.  The claims are thus invalid for lack of patent-eligible subject matter.

### A.     Claim 19 of the '207 Patent and Claim 10 of the '809 Patent Are Representative

A court is not required to individually address all claims of a patent as long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea."  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotation marks and citation omitted).

Regarding the '207 Patent, claim 19 identified in the Complaint and reproduced above is representative.  Other independent claims are substantially similar.  Claims 1 and 10 are virtually the same as claim 19 except that claims 1 and 10 include a generic server as part of the surveillance system.  *See* '207 Patent, 9:21-55, 10:31-62.  Claim 18 is substantially similar to claims 1, 10, and 19 except claim 18 is drafted in a method form.  *See id.* at 11:28-12:8; *Bancorp Serv.*, 687 F.3d at 1277 (holding that district court had "correctly treated the asserted system and medium claims as no different from the asserted method claims for patent eligibility purposes" while reiterating that "the form of the claims should not trump basic issues of patentability").  All the dependent claims are substantially similar to claim 19 and the other independent claims, and describe minor variations of the claimed methods and system.  Most of the dependent claims recite controlling the camera/motion detection settings used to record surveillance data through the mobile device, the exchange of information to facilitate such surveillance, or various ways of transmitting the surveillance data.  *See, e.g.*, claims 2, 12 (surveillance detection using GPS); claims 3, 13 (surveillance camera with radio); claims 4, 14

(surveillance data transmission alerted by short message); claims 5-7, 15-17 (surveillance data transmitted through a base station to and updated on the mobile device); claims 8, 23 (surveillance data transmitted including audio and video); claim 11 (motion detection triggering threshold setting); claims 20-22, 24-27 (various ways surveillance is being controlled through mobile device).

Regarding the '809 Patent, claim 10 identified in the Complaint and reproduced above is representative.  Other independent claims 1 and 18 are substantially similar by merely reordering the recited steps.  *See* '809 Patent, 9:17-40, 10:54-11:2.  The dependent claims are substantially similar to claim 10 and the other independent claims, and describe minor variations of the claimed methods.  Most of the dependent claims recite controlling the camera/motion detection settings used to record surveillance data through the mobile device, the exchange of information to facilitate such surveillance, or various ways of transmitting the surveillance data. *See, e.g.*, claims 2, 12 (surveillance detection using GPS); claims 3, 13 (radio communicating with surveillance camera); claims 4, 14 (surveillance data transmission alerted by short message); claims 5, 6, 15, 16 (surveillance data transmitted through a base station to and updated on the mobile device); claims 7, 11, 17 (motion detection triggering threshold setting); claims 8, 9 (delivering and storing surveillance data through mobile device); claims 19, 20 (ways surveillance data is being controlled and transmitted).

Accordingly, the claims of the Asserted Patents are all substantially similar to claim 19 of the '207 Patent and claim 10 of the '809 Patent and (as demonstrated below) linked to the same idea.  The Court can therefore rely on its analysis of claim 19 of the '207 Patent and claim 10 of the '809 Patent for purposes of determining that the claims of the Asserted Patents are not patent eligible.  *See, e.g., Fast 101 PTY Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 387-88 (D.

Del. 2020), *aff'd* 834 Fed. Appx. 591 (Fed Cir. 2020), *cert denied*, 141 S. Ct. 2725 (2021) (finding claim 1 representative "[b]ecause all of the independent claims of the remaining patents recite the same concept . . . and the dependent claims offer only minor, non-technical variations"); *BroadSoft, Inc. v. CallWave Commc'ns, LLC*, 282 F. Supp. 3d 771, 779 (D. Del. 2017), *aff'd*, 739 Fed. Appx. 985 (Fed. Cir. 2018) (finding claim 1 representative of the asserted claims for purposes of Section 101 analysis).

### B.   *Alice* Step 1: The Asserted Patents are Directed To Abstract Ideas

At their core, the claims of the Asserted Patents are directed to the patent ineligible abstract ideas of (1) mobile surveillance; and (2) remotely controlling the recording, storing, and delivering of surveillance data through a mobile device.  Because both of them are abstract ideas, the combination of the two is still abstract ideas.  *See Digital Playground*, 2016 WL 5793745, at *5 ("Simply combining these abstract ideas does not create a nonabstract idea."); *see also Morsa v. Facebook, Inc*., 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014) (finding claims invalid under § 101 when directed to "two abstract ideas"), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015).

### 1.   Mobile surveillance is an abstract idea

The stated purpose of the Asserted Claims is for "conducting surveillance data," and the claims expressly recite "a surveillance system," as can be seen in the preambles of the claims. *See, e.g.*, '809 Patent, 9:17, 10:7, 10:54; '207 Patent, 9:21, 10:31, 12:9; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017), *cert. denied*, 139 S. Ct. 378 (2018) (preamble may be considered in determining focus of claims) (citing *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016), and *Elec. Power Grp.*, 830 F.3d at 1353); *see also S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A. v. Rhapsody Int'l Inc.*, C.A. No. 18-69 (MN), 2019 WL 1785429, at *4

(D. Del. Apr. 24, 2019) (preamble supports finding that claims are directed to abstract idea (citing *Two-Way Media Ltd.*, 874 F.3d at 1340)).  Courts have consistently held that the concept of the Asserted Claims, *i.e.*, "remote surveillance or monitoring for security or control purposes," is abstract.  *See, e.g., Sensormatic Electronics,* 2021 WL 2944838 at *3 (invaliding claims under Section 101 because "[a]ll of the claims at issue describe wireless surveillance systems."); *Chamberlain Grp.*, 935 F.3d at 1347 (invalidating claims because "the broad concept of communicating information wirelessly, without more, is an abstract idea" and further finding no inventive concept in the claims sufficient to render them non-abstract); *Digital Playground, Inc.*, 2016 WL 5793745, at *5 (invalidating claims directed to "the abstract idea of remote surveillance or monitoring for security or control purposes"); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) (invalidating patents directed to the "abstract idea [of] monitoring locations, movements, and load status of shipping containers within a container-receiving yard, and storing, reporting, and communicating this information in various forms through generic computer functions"), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016); *Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, 207 F. Supp. 3d 405, 414-15 (D. Del. 2016) (finding claims directed to "remote tracking" invalid under § 101).  This should be sufficient to end the inquiry.

Indeed, "remote surveillance" stems from "[t]he general concept of keeping watch over property," which "is timeless."  *See Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 727 (N.D. Ill. 2016) ("As early as 31 BC, for example, the Romans monitored and secured their empire through numerous watchtowers, which could communicate through a signaling system.").  "Remote surveillance" is thus drawn to a "longstanding [] human activity" that falls "squarely within the realm of abstract ideas."  *Alice*, 573 U.S. at 220-21.  Here, '207

Patent claim 19 is no different than the offline human activity where an onsite surveillance observer ("i.e., "camera") observes suspicious activities through human eyes (i.e., motion detection) and relates the observed information to a remote manager (i.e., mobile device); '809 Patent claim 10 is similarly accommodated by offline human activity, including using calendar/planner (i.e., datebook) to schedule the time for the onsite observer to relate the data to the remote manager. Thus, the "remote surveillance" aspect of the claims here can be performed by human activities, and thus are decidedly abstract. *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318-22 (Fed. Cir. 2016).

### 2. Remotely controlling the recording, storing, and delivering of surveillance data through a mobile device is an abstract idea

The claim language demonstrates that, in addition to mobile surveillance, the representative claims are directed to remotely controlling the recording, storing, and delivering of surveillance data through a mobile device. *See* '207 Patent, Claim 19 ("… one camera **captures** surveillance data … the **mobile device** is configured to **control** … **transfer** of the surveillance data …); '809 Patent, Claim 10 ("**receiving** … from **a mobile device to control** … **capturing** the surveillance data … **transferring** said surveillance data to the mobile device …"); *Elec. Power Grp.*, 830 F.3d at 1353 ("[W]e have described the first-stage inquiry as looking at the 'focus' of the claims . . . ."). The Federal Circuit and other courts in this District have held that "remotely controlling the recording, storing, and delivering of surveillance data through a mobile device" are directed to unpatentable abstract ideas. *See ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 6066798, at *5 (D. Del Feb. 22, 2022) ("In sum, the recording, storing, delivering, and deleting of media content on a mobile device is an abstract idea. Remote control is an abstract idea. The piling of abstract ideas upon each other does not save the [patent at issue] *at Alice* step one.").

Indeed, the focus of the representative claims of the Asserted Patents is substantially similar to the focus of the claims rejected as unpatentable by the Federal Circuit in *In re TLI Communications Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016). In *TLI Communications*, the Federal Circuit addressed claims reciting the use of mobile devices to record, store, and deliver digital images and classification information to a central server. *Id*. at 610. Exemplary claim 17 of the asserted patent there recited "***recording*** images using a digital pick up unit [i.e., a camera] in a telephone unit [e.g., a mobile device]," "***storing*** the images recorded by the digital pick up unit in a digital form as digital images," and "***transmitting*** data including at least the digital images and classification information to a server . . ." *Id*. (emphasis added). The Federal Circuit held that the claims were directed to an unpatentable abstract idea, *i.e*., "classifying and storing digital images in an organized manner." *Id*. at 611. Key limitations of the claims in *TLI Communications*, although focused on digital photos rather than surveillance data with video/audio, are analogous to key limitations of representative claims of the Asserted Patents.

The Federal Circuit has also held that the delivery of recorded video and audio from a central server to mobile devices is an unpatentable abstract idea. For example, in *Affinity Labs of Texas, LLC v. Amazon.com Inc*., 838 F.3d 1266 (Fed. Cir. 2016), the Federal Circuit addressed claims reciting a method of using a mobile device to obtain and play back media content stored on a network based server. *Id*. at 1268. The Federal Circuit, relying on *TLI Communications*, held that the claims were directed to the unpatentable abstract idea of "delivering user-selected media content to portable devices . . ." *Id*. at 1269. The Federal Circuit emphasized that "[t]he purely functional nature of the claim confirms that it is directed to an abstract idea . . ." *Id*. The representative claims of the Asserted Patents are also functional and analogous to the *Affinity Labs* claims — except that instead of reciting the download and

playback of media content from a central server using a mobile device, they recite the recording, storing, and transferring surveillance data (video and audio) to a mobile surveillance system through a mobile device. The direction that the media content is sent, however, does not change the fundamentally abstract nature of the idea.

Another court in this District has also held that claims focused on retrieving and transmitting media content were abstract. In *VideoShare, LLC v. Google, Inc*., C.A. No. 13-990 (GMS), 2016 WL 4137524 (D. Del. Aug. 2, 2016), aff'd, 695 Fed. Appx. 577 (Fed. Cir. 2017), the claims recited a method of streaming video and associated advertisements over a network including "receiving" and "storing" an advertisement; "receiving a video file"; "converting the video file into a streaming video file"; and "storing the streaming video file to a storage device"; "associating the streaming video file with the advertisement"; and "transmitting . . . the streaming video file and the advertisement to a second computer on the network." *Id*. at *1. The court analogized the claims to *TLI Communications* and held that the claims were directed to the unpatentable abstract idea of "preparing a video in streaming video format for sharing over a computer network." *Id*. at *8.

These cases are merely part and parcel of a long line of precedents finding that recording, storing, and transmitting data over a network is a fundamentally abstract idea. *See, e.g.*, *Elec. Power Grp*., 830 F.3d at 1353 ("collecting information, analyzing it, and displaying certain results of the collection and analysis"); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346-47 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 241 (2020) (wirelessly communicating status information); *Content Extraction*, 776 F.3d at 1347-48 (monitoring, collecting, and displaying statistics from a mobile device on a remote server).

### 3. Dependent claims are also abstract ideas

The dependent claims, as demonstrated above, specify mere variations relating to

controlling the camera/motion detection settings used to record surveillance data through the mobile device, the exchange of information to facilitate such surveillance, or various ways of transmitting the surveillance data.  (*See supra* §V.A.)  Accordingly, the dependent claims do not change the fundamental abstract ideas of (1) mobile surveillance and (2) remotely controlling the recording, storing, and delivering of surveillance data through a mobile device. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 n.1 (Fed. Cir. 2018) (additional limitations in dependent claims adding elements directed to types of information processed did not change abstract idea).  This is especially true, where is here, when the variations in the dependent claims are mere minor variations and thus do not change the abstract ideas.  *See WiTricity Corp. v. Momentum Dynamics Corp.*, C.A. No. 20-1671 (MSG), 2021 WL 4426959, at *12 (D. Del. Sept. 27, 2021) (dependent claims to "variations on the same abstract idea of optimizing either efficiency or power level in a power transfer process" did not change abstract nature of independent claims).

### 4.      The claims do not improve computer technology

The claims of the Asserted Patents do not recite any improvement to computers, and instead merely use generic computers and components for their conventional, general purposes.

The Federal Circuit has emphasized that a key inquiry when addressing patentability under Section 101 is whether the claims are directed to an improvement in computer functionality or merely use computers as tools.  *See TLI Commc'ns*, 823 F.3d at 612; *see also Rondevoo Techs., LLC v. Aernos, Inc.*, C.A. No. 19-680 (RGA), 2020 WL 1441116, at *4 (D. Del. Mar. 24, 2020).

Here, the claims of the Asserted Patents are not directed to any improved computer technology.  The claims do not recite any new computer, hardware component, file format, data structure, or communication protocol that improves in any way on existing technology.  The

claims do not recite any new means of recording, storing, or delivering surveillance data to avoid the alleged problems with existing methods. *See TLI Commc'ns*, 823 F.3d at 612 ("storing, receiving, and extracting data" using servers is conventional, and claims merely describe "generalized steps to be performed on a computer using conventional computer activity"); *WhitServe LLC v. Dropbox, Inc.*, 854 Fed. Appx. 367, 372 (Fed. Cir. 2021) (claims "rely on the ordinary storage and transmission capabilities of computers within a network . . .").

The hardware recited in the claims — a "mobile device," "camera," "microphone," "motion detection device," "server," "memory," and "processor" — is purely conventional. For example, the specification suggests that the "mobile device" is "any type of wireless communications device such as a cellular phone or PDA device." ('207 Patent, 5:51-65.) The specification also discloses that the "memory" and "processor" are generic and used for their routine storage and processing purpose. (*Id*. at 6:43-53.)

The claims also do not disclose using any of these conventional hardware in any way other than how they have always been used. For example, the claims do not disclose any new or improved means of connecting these components, any improved type of network connection, or any new way to record, store, or deliver surveillance data (video or audio). The communication by and between these components (*e.g.*, "signal") is also described in purely functional terms. *See TLI Commc'ns*, 823 F.3d at 612 ("[T]he specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms"). Further, the claims are replete with broad, results-oriented language for carrying out the abstract ideas. *See* '809 Patent, claim 19 ("***configured to*** communicate with at least one camera … ***configured to*** control activation of the mobile surveillance system") (emphasis added); *Two-Way Media, Ltd. v. Comcast Cable Commc'ns,*

*LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017); *see also In-Depth Test*, 2018 WL 6617142, at *6 (finding that the patent is not directed to improvements in computer functionality when it "simply claims a conventional computer that . . . is 'configured'" to perform certain functions).

Thus, the claims of the Asserted Patents are the quintessential example of claimed ideas that merely use generic computers and components as tools. *See SynKloud Techs., LLC v. HP Inc.*, 490 F. Supp. 3d 806, 819 (D. Del. 2020) (claims directed to unpatentable abstract idea where none of alleged computer improvements "'enables a computer . . . to do things it could not do before'" (quoting *Finjan Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018))); *see also PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) ("'[T]he focus of the claims is not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools.'" (quoting *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1045 (Fed. Cir. 2017))).

### C. *Alice* Step 2: The Claims of the Asserted Patents Recite No Inventive Concept

The limitations of asserted claims of the Asserted Patents, considered individually and as ordered combinations, do not recite any inventive concept.

As demonstrated above, representative and other independent claims of the Asserted Patents do not recite any improved computer, hardware component, file format, data structure, communication protocol, or any other improvement to computer technology. (*See supra* §V.B.4.) Rather, they recite using well-known and conventional computers and components (e.g., "mobile device," "camera," "microphone," "motion detection device," "server," "memory," and "processor") to perform "well-understood, routine, conventional activities previously known in the industry." *Alice*, 573 U.S. at 225; *DIRECTV*, 838 F.3d at 1262 (finding no inventive concept where the claim "simply recite[d] the use of generic features of cellular

telephones, such as a storage medium and a graphical user interface, as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea"); *Elec. Power Grp.*, 830 F.3d at 1355–56 ("We have repeatedly held that such invocations of computers and networks that are not even arguably inventive are insufficient to past the test of an inventive concept in the application of an abstract idea").

The dependent claims also do not add any inventive concept.  Many of the dependent '207 Patent claims (11, 20-22, 24-27) and '809 Patent claims (7, 8, 9, 11, 17, 18, 20) recite controlling the camera/motion detection settings used to record surveillance data through the mobile device, the exchange of information to facilitate such surveillance, or various ways of transmitting the surveillance data, and thus do not add any new hardware or identify any improved technology.  *See Sensormatic Elecs.*, 2021 WL 2944838, at *3 ("[p]roviding generic devices that communicate with each other . . . is a conventional application of an abstract idea"); *ChargePoint*, 920 F.3d at 774 (rejecting alleged inventive concept of network control of charging stations because "network control is the abstract idea itself").  The other dependent '207 Patent claims (2-8, 12-17, 23) and '809 Patent claims (2-6, 12-16) merely recite additional conventional components used in conventional ways.  (*See supra* § V.B.4.); *OpenTV*, 2016 WL 344845, at *7 (these are nothing more than "generic and well-known components.").

Finally, nothing about the "ordered combination" of claim elements "transform[s]" the nature of the claims into a patent-eligible invention.  *Alice*, 573 U.S. at 217.  The sequence in the claims is what one would expect to follow to implement the abstract ideas of remote surveillance and remotely controlling the recording, storing, and delivering of surveillance data through a mobile device in a logical and practical way.  Nor can there be any argument that the purported novelty of the combination or sequence of steps in the claims of the Asserted Patents

resolves the deficiencies under § 101.  *See Synopsis, Inc. v. Mentor Graphics Corp.*, 839 F.3d

1138, 1151 (Fed. Cir. 2016) ("a claim for a *new* abstract idea is still an abstract idea") (emphasis

in original); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) ("We do not

agree with *Ultramercial* that the addition of merely novel or non-routine components to the

claimed idea necessarily turns an abstraction into something concrete"); *SkillSurvey, Inc. v.

Checkster LLC*, 178 F. Supp. 3d 247, 260 (E.D. Pa. 2016) ("A novel combination of steps alone

cannot alone render an abstract idea patentable."), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017).

This is because a novel sequence of steps still results in only a "grouping of conventional steps

and extant technology."  *See Smart Sys. Innovations, LLC v. Chicago Transit Authority.*, No.

14-cv-08053, 2015 WL 4184486, at *6 (N.D. Ill. July 10, 2015).

  In sum, all claims of the Asserted Patents do not disclose any inventive concept.  *See

PersonalWeb Techs.*, 8 F.4th at 1319; *Content Extraction*, 776 F.3d at 1348; *see also S.I.SV.EL.

Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A. v. Rhapsopy Int'l Inc*., No. 18-69 (MN),

2019 WL 2491898, at *6 (D. Del. June 14, 2019) (claims "do not require use of anything more

than off-the-shelf computer technology . . . as a tool to implement what is really an assertedly

better way of analyzing data using mathematical techniques"); *B# on Demand LLC*, 484 F.

Supp. 3d at 205 (recitation of various technological components not enough to confer

patentability "where the claims do not offer an improvement in that technology").

## VI. CONCLUSION

  Because all claims of the Asserted Patents are directed to patent-ineligible subject

matter, Fantasia respectfully requests that the Court grant its motion for judgment on the

pleadings and dismiss Plaintiff's Complaint *with prejudice*.

Dated:  September 6, 2022

Respectfully submitted,

/s/ Zhun Lu
_____
Zhun Lu (#4427)
**RIMON, P.C.**
200 Continental Drive, Suite 401
Newark, DE 19713
Telephone/Facsimile: (302) 688-7566
zhun.lu@rimonlaw.com

Of Counsel:

Jason Xu (Pro Hac Vice Admitted)
**RIMON, P.C.**
1990 K Street NW, Suite 420
Washington, D.C. 20006
Telephone/Facsimile: (202) 470-2141
jason.xu@rimonlaw.com

Attorneys for Defendant Fantasia Trading
LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

<u>/s/ Cheryl Lovdahl</u>